UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

ROBERT CARL GARDNER,

                    Plaintiff,                    Case No. 1:25-cv-529

v.                                                Honorable Phillip J. Green

L. PANTS, et al.,

                    Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. In a separate order, the Court has granted Plaintiff leave to proceed *in forma pauperis*.  Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (ECF No. 1, PageID.5.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  The Court is required to conduct this initial review prior to the service of the complaint.  *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997).  Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999).  "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted).  That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351.  Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal.  *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ."

28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim. Plaintiff's motion to amend (ECF No. 4) will be denied.

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

3

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Oaks Correctional Facility (ECF) in Manistee, Manistee County, Michigan.  The events about which he complains occurred at that facility. Plaintiff sues the following ECF personnel: Registered Nurses (RNs) L. Pants, Unknown Briske, and Unknown Mason; Nurse Unknown Martier; and Correctional Officer Unknown Vogue.  (Compl., ECF No. 1, PageID.2.)  Plaintiff sues Defendants in their official capacities.  (*Id.*)

In Plaintiff's complaint, he alleges that on March 1, 2025, at around 7:30 a.m., he "was brought [his] medication," and "[he] told the nurse that [he was] on Ramadan and [he was] suppose[d] to get [his] medication before [he] pray[s] and after [he] pray[s] or before the sun comes up and when the sun goes down."[2]  (*Id.*, PageID.3.) Later that same day, at some point between 11:30 a.m. and 12:00 p.m., Plaintiff "was brought [his] noon meds [and he] told the nurse the same thing [Plaintiff] told her in the [morning]."  (*Id.*)  The unnamed nurse told Plaintiff if he did not take his medicine, he "would be panel and force[d] to take [his] meds."  (*Id.* (phrasing in original retained).)

---

[2] In this opinion, the Court corrects the capitalization and punctuation in quotations from Plaintiff's filings.

On March 2, 3, 4, 5, 6, 9, 10, 23, 24, 26, and 27, 2025, Plaintiff "was brought [his] a.m. and noon meds by RNs Pants, Briske, [and] Mason," and "they all told [him] if [he did not] take [his] meds, [he] would be panel." (*Id.* (phrasing in original retained).)

Plaintiff claims that "at no time did the RNs or nurses try to give [him his] meds at the proper time." (*Id.*)

On March 30, 2025, Defendant Martier brought Plaintiff his morning medicine, and Plaintiff "told [Martier] she only brought [Plaintiff his] boost bar [and] can she bring [Plaintiff's] Effexor." (*Id.*) Defendant Martier told Plaintiff that she would do so "at 6:10." (*Id.*) At an unspecified time, Plaintiff told non-party Correctional Officer "Llyod" that Plaintiff had not received his "a.m. Effexor [and] can he call healthcare. " (*Id.*) Non-party Correctional Officer "Llyod" "said he would." (*Id.*) Thereafter, "at noon, [Plaintiff] talked to the nurse working and told her [he had not received his] a.m. Effexor." (*Id.*) The unnamed nurse said that she would talk to non-party RN Dank. (*Id.*) At some later unspecified time, non-party Correctional Officer Liz "called healthcare," and "they said Nurse Martier put in the book [that Plaintiff had received his] Effexor even though [he had not]." (*Id.*)

Subsequently, at around 3:05 p.m. on March 30, 2025, Plaintiff was "observed . . . on the ground shaking," and he was brought to ECF's healthcare unit. (*Id.*, PageID.4.) Plaintiff was then transported to Munson Hospital. (*Id.*) Plaintiff asked the doctor at Munson Hospital if his "seizure like behavior" was "[be]cause [Plaintiff

had not] had [his] medication Effexor for 24–36 hours." (*Id.*)  In response, the doctor at Munson Hospital told Plaintiff that it "is unclear." (*Id.*)

"While [Plaintiff] was out of [his] cell, [Defendant] Vogue went inside [Plaintiff's] cell . . . and trashed [the] cell," "put[ting] [Plaintiff's] family pictures in the toilet and rip[ping] up [Plaintiff's] legal mail." (*Id.*)  Plaintiff claims "this officer's actions [were] retaliation for [Plaintiff] putting in a grievance on healthcare." (*Id.*)

Based on the foregoing allegations, Plaintiff avers that Defendants violated his First Amendment right to the free exercise of religion, Eighth Amendment rights as related to his receipt of medical care, Fourteenth Amendment due process rights as related to the deprivation of his personal property, and First and Fourteenth Amendment rights to access the courts.  The Court also construes Plaintiff's complaint to raise claims under the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1(a).  As relief, Plaintiff seeks monetary damages. (*Id.*, PageID.5.)

## II.    Motion to Amend

After filing his complaint, Plaintiff filed a motion, seeking to amend his complaint.  (ECF No. 4.)  The majority of the claims that Plaintiff seeks to add are about events that occurred after he filed his complaint.  Therefore, Plaintiff's motion to amend is properly analyzed as both a motion to amend and a motion to supplement.

Rule 15(a) of the Federal Rules of Civil Procedure provides that "leave [to amend] shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a)(2). Supplemental pleadings are governed by Federal Rule of Civil Procedure 15(d), which allows a court to "permit a party to serve a supplemental pleading setting out any

transaction, occurrence or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d).  Plaintiff may not supplement his pleading "as of right;" he must seek leave of court by motion.

When a party moves for leave to supplement his pleadings under Rule 15(d), "the same standard of review and rationale apply" as a motion for leave to amend under Rule 15(a) of the Federal Rules of Civil Procedure.  *Spies v. Voinovich*, 48 F. App'x 520, 527 (6th Cir. 2002).  In *Foman v. Davis*, 371 U.S. 178 (1962), the Supreme Court identified some circumstances in which "justice" might counsel against granting leave: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc."  *Id.* at 182.  Further, if a claim is properly dismissed, amendment would be futile.  *Thiokol Corp. v. Mich. Dep't of Treasury*, 987 F.2d 376, 383 (6th Cir. 1993).

In Plaintiff's motion, he seeks to bring additional claims against Defendants Vogue and Briske.  (*See* ECF No. 4.)  Plaintiff also describes the actions of several non-parties, none of whom Plaintiff identifies as Defendants.  (*See id.*)

First, as to the non-parties referenced in Plaintiff's motion, Federal Rule of Civil Procedure 10(a) requires that a plaintiff "name all of the parties" in "[t]he title of the complaint."  Fed. R. Civ. P. 10(a).  Further, this Court has previously concluded that "[o]nly those individuals and entities identified in the caption of the complaint are properly considered defendants in an action, regardless of the complaint's other

7

contents or allegations." *Jones v. Smith*, No. 1:10-cv-568, 2012 WL 726665, at *1 (W.D. Mich. Feb. 1, 2012), *R & R adopted*, 2012 WL 726621 (W.D. Mich. Mar. 6, 2012); *see also Brown v. Mich. Dep't of Corr.*, No. 1:22-cv-16, 2022 WL 2900888, at *1 n.2 (W.D. Mich. Jul. 22, 2022) (concluding that corrections officers identified as defendants in a particular count of the complaint, but not named in the caption or in the form complaint "list of parties" were not parties to the action). Accordingly, for these reasons, any intended claims against the non-party individuals discussed in the motion would be subject to dismissal. Under these circumstances, because these claims would be properly dismissed, it would be futile to allow Plaintiff to amend or supplement his complaint to add these claims against the non-parties.

Next, as to Defendant Vogue, in Plaintiff's motion, he claims that on April 21, 2025, Defendant Vogue went into Plaintiff's cell and "threw [Plaintiff's] belongings all over the cell," and that on April 22, 2025, Defendant Vogue "went back in [Plaintiff's] cell and destroyed [Plaintiff's] legal work and . . . personal books." (ECF No. 4, PageID.15.) These claims are substantially similar to Plaintiff's claims against Defendant Vogue in the original complaint (*see* ECF No. 1); however, it is unclear if they are the same claims because Plaintiff did not identify the date on which Defendant Vogue took the actions alleged in the original complaint. Regardless, because the allegations in the motion are substantially similar to the allegations against Defendant Vogue in the original complaint, the claims against Defendant Vogue as set forth in Plaintiff's motion would be subject to dismissal for failure to state a claim for the same reasons that Plaintiff's claims against Defendant Vogue as

set forth in the original complaint are subject to dismissal.  *See infra* Sections III.D–F (addressing, and ultimately dismissing, Plaintiff's claims against Defendant Vogue regarding Vogue destroying Plaintiff's personal property and legal mail.)  Therefore, because the claims against Defendant Vogue, as set forth in Plaintiff's motion, would be properly dismissed for failure to state a claim, it would be futile to allow Plaintiff to amend or supplement his complaint to add these claims against Defendant Vogue.

Finally, as to Defendant Briske, Plaintiff alleges that on May 19, 2025, he had chest pains and that at some point later, he "was found on the ground unresponsive." (ECF No. 4, PageID.17.)  Plaintiff was brought to the healthcare unit at the facility, and Defendant Briske "came in with an angry look on her face," and "she said 'you don't look like your [sic] in pain."  (*Id.*)  Defendant Briske then asked Plaintiff "what was going on," and Briske took Plaintiff's blood pressure, temperature, and weight, and had Plaintiff provide a urine sample.  (*Id.*)  Plaintiff alleges in a conclusory manner that Defendant Briske "did not properly address [Plaintiff's] medical emergency," which the Court construes as an attempt to raise an Eighth Amendment claim against Briske; however, the *facts* alleged by Plaintiff show that Defendant Briske provided medical care to Plaintiff by performing several diagnostic tests.  (*Id.*) It is clear that Plaintiff disagrees with the actions taken by Defendant Briske, but "a patient's disagreement with his physicians over the proper course of treatment alleges, at most, a medical-malpractice claim, which is not cognizable under § 1983." *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017) (citations omitted); *see infra* Section III.C (setting forth the standard for Eighth Amendment claims).  Thus, it

would be futile to allow Plaintiff to supplement his complaint to add this claim against Defendant Briske because this claim fails to state a claim upon which relief may be granted.

Accordingly, for these reasons, the Court concludes that the proposed claims in the pending motion fail to state any claim upon which relief may be granted. Therefore, Plaintiff's motion to amend (ECF No. 4) will be denied as futile.

## III.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is

entitled to relief." *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly / Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## A.    Section 1983 Official Capacity Claims

Plaintiff sues Defendants in their official capacities only.  (Compl., ECF No. 1, PageID.2.)  A suit against an individual in his or her official capacity is equivalent to a suit against the governmental entity.  *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994).

### 1.    Defendants Employed by the MDOC

As to any Defendants employed by the MDOC, Plaintiff's official capacity claims against these Defendants are equivalent to claims against the MDOC.

The states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S.

781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994).  Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court.  *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986).  And, regardless, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages.  *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will*, 491 U.S. at 66).

Here, Plaintiff seeks monetary damages only.  (Compl., ECF No. 1, PageID.5.) However, as noted above, the MDOC is not a "person" who may be sued under § 1983 for money damages.  *See, e.g.*, *Lapides*, 535 U.S. at 617.  Similarly, Plaintiff may not seek monetary damages against Defendants in their official capacities.  *Will*, 491 U.S. at 71 ("We hold that neither a State nor its officials acting in their official capacities are "persons" under § 1983.").

Accordingly, Plaintiff has failed to state a claim against any Defendants employed by the MDOC in their official capacities upon which relief may be granted, and his official capacity claims against any Defendants employed by the MDOC will be dismissed for failure to state a claim.

### 2.    Defendants Employed by a Prison Medical Provider that Contracts With the State

With respect to any Defendants employed by a private entity that contracts with the state to provide healthcare to inmates, Plaintiff's official capacity claims are equivalent to a suit against the private entity.  A private entity that contracts with a governmental entity to perform a traditional governmental function like providing

healthcare to inmates can "be sued under § 1983 as one acting 'under color of state law.'" *Hicks v. Frey*, 992 F.2d 1450, 1458 (6th Cir. 1993) (quoting *West*, 487 U.S. at 54). The requirements for a valid § 1983 claim against a municipality apply equally to private corporations that are deemed state actors for purposes of § 1983. *See Starcher v. Corr. Med. Sys., Inc.*, 7 F. App'x 459, 465 (6th Cir. 2001) (recognizing that the holding in *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), has been extended to private corporations); *Street*, 102 F.3d at 817–18 (same); *Rojas v. Alexander's Dep't Store, Inc.*, 924 F.2d 406, 409 (2d Cir. 1990) (same); *Cox v. Jackson*, 579 F. Supp. 2d 831, 851–52 (E.D. Mich. 2008) (same).

"Under 42 U.S.C. § 1983, while a municipality can be held liable for a constitutional violation, there is no vicarious liability based on the acts of its employees alone." *Lipman v. Budish*, 974 F.3d 726, 747 (6th Cir. 2020) (citing *Monell*, 436 U.S. 690–91). Instead, a municipality "can be sued under § 1983 only when a policy or custom of that government caused the injury in question." *Id.* (citations omitted). "[T]he finding of a policy or custom is the initial determination to be made in any municipal liability claim." *Doe v. Claiborne Cnty.*, 103 F.3d 495, 509 (6th Cir. 1996). Further, the policy or custom must be the moving force behind the constitutional injury, and a plaintiff must identify the policy, connect the policy to the governmental entity, and show that the particular injury was incurred because of the execution of that policy. *Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005) (citing *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003)); *Claiborne Cnty.*, 103 F.3d at 508–09.

A policy includes a "policy statement, ordinance, regulation, or decision officially adopted and promulgated" by the entity. *See Monell*, 436 U.S. at 690. Moreover, the United States Court of Appeals for the Sixth Circuit has explained that a custom "for the purposes of *Monell* liability must be so permanent and well settled as to constitute a custom or usage with the force of law." *Claiborne Cnty.*, 103 F.3d at 507. "In short, a 'custom' is a 'legal institution' not memorialized by written law." *Id.*

Here, Plaintiff fails to allege that any policy or custom was the moving force behind his alleged constitutional injury. Where a plaintiff fails to allege that a policy or custom existed, dismissal of the action for failure to state a claim is appropriate. *Rayford v. City of Toledo*, No. 86-3260, 1987 WL 36283, at *1 (6th Cir. Feb. 2, 1987). Furthermore, even liberally construing Plaintiff's complaint, as the Court is required to do, even if Plaintiff intended to suggest the existence of a custom, his allegations are wholly conclusory. *Cf. Bilder v. City of Akron*, No. 92-4310, 1993 WL 394595, at *2 (6th Cir. Oct. 6, 1993) (affirming dismissal of § 1983 action when plaintiff allegation of policy or custom was conclusory, and plaintiff failed to allege facts tending to support the allegation). Accordingly, because Plaintiff fails to allege the existence of a policy or custom of the private entity, Plaintiff's official capacity claims against any Defendants employed by a private entity that contracts with the state to provide healthcare to inmates will be dismissed.[3]

---

[3] In summary, for the reasons set forth above, Plaintiff fails to state any § 1983 claims against Defendants in their official capacities. Plaintiff sues Defendants in their official capacities only. (Compl., ECF No. 1, PageID.2.) Therefore, for this reason

### B.    First Amendment Religious Exercise & RLUIPA Claims

Plaintiff alleges that Defendants Pants, Briske, and Mason[4] violated his First Amendment right to the free exercise of religion and his rights under RLUIPA when Plaintiff received medication during his Ramadan fast.  (*See* Compl., ECF No. 1, PageID.3.)

The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const. amend I.  The right to freely exercise one's religion falls within the fundamental concept of liberty under the Fourteenth Amendment.  *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940).  Accordingly, state legislatures and those acting on behalf of a state are "as incompetent as Congress" to interfere with the right.  *Id.*  While "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates clearly retain the First Amendment protection to freely exercise their religion.  *See O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted).  To show that this right has been violated, Plaintiff must establish that: (1) the belief or practice he seeks to protect is religious within his own "scheme of things," (2) that his belief is sincerely held, and (3) Defendants' behavior infringes upon this practice

---

alone, Plaintiff's § 1983 claims are subject to dismissal for failure to state a claim. Moreover, even setting this issue aside and considering the merits of Plaintiff's claims, as set forth in this opinion, Plaintiff fails to state any claim against Defendants upon which relief may be granted.

[4] Plaintiff alleges no facts to suggest that Defendant Martier and Vogue violated his rights under the Free Exercise Clause of the First Amendment and under RLUIPA. (*See generally* Compl., ECF No. 1.) Therefore, if Plaintiff had intended to raise such claims against Defendant Martier and Vogue, these claims would be subject to dismissal for failure to state a claim.

or belief. *Kent v. Johnson*, 821 F.2d 1220, 1224–25 (6th Cir. 1987); *see also Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (same); *Bakr v. Johnson*, No. 95-2348, 1997 WL 428903, at *2 (6th Cir. July 30, 1997) (noting that "sincerely held religious beliefs require accommodation by prison officials").

"[T]he Supreme Court has made clear that the 'substantial burden' hurdle is high." *Living Water Church of God v. Charter Twp. Of Meridian*, 258 F. App'x 729, 734 (6th Cir. 2007). "[A] 'substantial burden' is a difficult threshold to cross." *Id.* at 736. "[A] 'substantial burden' must place more than an inconvenience on religious exercise." *Id.* at 739 (quoting *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1227 (11th Cir. 2004)). A particular government action will not be considered a substantial burden merely because it "may make [the] religious exercise more expensive or difficult . . . ." *Id.*

Further, in relevant part, RLUIPA prohibits any government from imposing a "substantial burden on the religious exercise" of a prisoner, unless such burden constitutes the least restrictive means of furthering a compelling governmental interest. 42 U.S.C. § 2000cc-1(a). "The term 'religious exercise' includes any exercise of religion, whether or not compelled by, or central to, a system of religious belief." *Id.* § 2000cc-5(7).

"RLUIPA creates a burden-shifting framework for assessing prisoner claims." *Ackerman v. Washington*, 16 F.4th 170, 179 (6th Cir. 2021) First, a prisoner-plaintiff must show that (1) his "desired religious exercise is motivated by a 'sincerely held religious belief'" and (2) "the government is substantially burdening that religious

exercise." *Id.* (citing *Cavin v. Mich. Dep't of Corr.*, 927 F.3d 455, 458 (6th Cir. 2019)). "If the prisoner successfully shows the state substantially burdens a sincere religious belief, the burden shifts to the government to justify the burden on the religious adherent under the 'daunting compelling interest and least-restrictive-means test,' with a slight twist." *Id.* (quoting *Cavin*, 927 F.3d at 458). That is, "[c]ourts must give 'due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources.'" *Id.* at 179–80 (quoting *Cutter v. Wilkinson*, 544 U.S. 709, 723 (2005)).

The phrase "substantial burden" is not defined in RLUIPA. The Sixth Circuit has relied upon the Act's legislative history to conclude that the term has the same meaning under RLUIPA as provided by the Supreme Court in its "free exercise" decisions. *Living Water*, 258 F. App'x at 733–34. Accordingly, a burden is substantial where it forces an individual to choose between the tenets of his religion and foregoing governmental benefits or places "substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Id.* (citations omitted). Thus, under the First Amendment or RLUIPA, Plaintiff must allege that his sincerely held religious beliefs have been substantially burdened.

As relevant to Plaintiff's First Amendment free exercise and RLUIPA claims, Plaintiff alleges that on March 1, 2025, at around 7:30 a.m., he "was brought [his] medication," and "[he] told the nurse that [he was] on Ramadan and [he was] suppose[d] to get [his] medication before [he] pray[s] and after [he] pray[s] or before

the sun comes up and when the sun goes down." (Compl., ECF No. 1, PageID.3.)
Later that same day, Plaintiff "was brought [his] noon meds [and he] told the nurse
the same thing [Plaintiff] told her in the [morning]." (*Id.*) The unnamed nurse told
Plaintiff if he did not take his medicine, he "would be panel and force[d] to take [his]
meds." (*Id.* (phrasing in original retained).) Subsequently, on March 2, 3, 4, 5,6, 9,
10, 23, 24, 26, and 27, 2025, Plaintiff "was brought [his] a.m. and noon meds by RNs
Pants, Briske, [and] Mason," and "they all told [him] if [he did not] take [his] meds,
[he] would be panel." (*Id.* (phrasing in original retained).) Plaintiff claims that "at
no time did the RNs or nurses try to give [him his] meds at the proper time." (*Id.*)

As an initial matter, Plaintiff fails to allege the nature of his religious beliefs
or any facts that would plausibly suggest that those beliefs are "sincerely held." (*See
id.*); *see also Kent*, 821 F.2d at 1224–25; *Ackerman*, 16 F.4th at 179. Although there
is no doubt that participation in Ramadan is a religious practice, Plaintiff alleges no
facts about his specific sincerely held religious beliefs and practices.

Moreover, "the operative word 'prohibit' in the First Amendment . . . connotes
a 'conscious act,'" and a plaintiff "must assert conscious or intentional interference
with his free exercise rights to state a valid claim under § 1983." *Lovelace v. Lee*, 472
F.3d 174, 201 (4th Cir. 2006) (citations omitted). "[N]egligent acts by officials causing
unintended denials of religious rights do not violate the Free Exercise Clause." *Id.*
(citation omitted); *see Colvin v. Caruso*, 605 F.3d 282, 293–94 (6th Cir. 2010) (holding
that isolated incidents of negligence by prison officials in implementing kosher food
requirements is not actionable under the First Amendment); *Gallagher v. Shelton*,

587 F.3d 1063, 1069–70 (10th Cir. 2009) (holding that isolated acts of negligence in providing a kosher diet do not support a free-exercise claim); *Cullen v. Wall*, No. 1:24-cv-48, 2024 WL 1925880, at *6–7 (W.D. Mich. May 2, 2024).  Likewise, negligent action does not violate RLUIPA.  *See, e.g.*, *Colvin v. Horton*, No. 2:19-cv-122, 2019 WL 3927425, at *6 (W.D. Mich. Aug. 20, 2019) (concluding that "in the absence of a state-of-mind standard under the statute itself, liability under the RLUIPA is limited to intentional conduct"); *Guillory v. Ellis*, No. 9:11-cv-600, 2014 WL 4365274, at *9 n.10 (N.D.N.Y. Aug. 29, 2014) (same); *Nelson v. Jackson*, No. 2:12-cv-1167, 2014 WL 197877, at *13 (S.D. Ohio Jan. 15, 2014) (same), *R & R adopted*, No. 2:12-cv-1167, 2014 WL 558710 (S.D. Ohio Feb. 13, 2014).

Here, in the complaint, Plaintiff fails to allege any facts to suggest that Defendants Pants, Briske, and Mason intentionally interfered with his free exercise rights or his rights under RLUIPA because Plaintiff does not allege any facts to suggest that Defendants knew that Plaintiff was participating in Ramadan on the dates on which they brought his medication.  (*See* Compl., ECF No. 1, PageID.3.) Plaintiff alleges that on March 1, 2025, he informed an unnamed nurse that he could only take medication at certain times during Ramadan; however, Plaintiff does not allege that he informed Defendants Pants, Briske, and Mason of this or that Defendants Pants, Briske, and Mason had any other knowledge of Plaintiff's participation in Ramadan.  And, even if Plaintiff had alleged—which he does not— that Defendants should have known he was participating in Ramadan, "[a] 'should-have-known framework[]' suggests a 'classic negligence formulation.'"  *Cullen*, 2024

WL 1925880, at *7 (quoting *Doe v. Jackson Loc. Sch. Dist. Bd. of Ed.*, 954 F.3d 925, 932 (6th Cir. 2020)).  And, as discussed above, allegations that show only negligent action are insufficient to state either a First Amendment free exercise claim or a RLUIPA claim.

Accordingly, for all of these reasons, Plaintiff's First Amendment free exercise and RLUIPA claims will be dismissed for failure to state a claim.[5]

### C.    Eighth Amendment Medical Care Claims

Plaintiff alleges that Defendants Pants, Briske, Mason, and Martier, all of whom Plaintiff identifies as nurses at ECF, violated his Eighth Amendment rights as related to his receipt of various medications.[6]  (*See* Compl., ECF No. 1, PageID.3.)

---

[5] The Court notes that Plaintiff fails to state a claim under RLUIPA for additional reasons. Under current controlling precedent, RLUIPA does not create a cause of action against an individual in that individual's personal capacity. *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 331 (5th Cir. 2009), *aff'd*, *Sossamon v. Texas*, 563 U.S. 277 (2011); *see also Grayson v. Schuler*, 666 F.3d 450, 451 (7th Cir. 2012) ("[RLUIPA] does not create a cause of action against state employees in their personal capacity."); *Washington v. Gonyea*, 731 F.3d 143, 145 (2d Cir. 2013) ("RLUIPA does not provide a cause of action against state officials in their individual capacities . . . ."). Moreover, RLUIPA does not permit damages claims against prison officials in their official capacities. A suit against an individual in his or her official capacity is equivalent to a suit brought against the governmental entity. *See Will*, 491 at 71; *Matthews*, 35 F.3d at 1049. In *Sossamon v. Texas*, 563 U.S. 277 (2011), the Supreme Court held that the RLUIPA did not abrogate sovereign immunity under the Eleventh Amendment. *See also Cardinal v. Metrish*, 564 F.3d 794, 801 (6th Cir. 2009) ("[T]he Eleventh Amendment bars plaintiff's claim for monetary relief under RLUIPA."). Therefore, although the statute permits the recovery of "appropriate relief against a government," 42 U.S.C. § 2000cc-2(a), monetary damages are not available under RLUIPA. Thus, Plaintiff would only be able to raise a RLUIPA claim for injunctive or declaratory relief against Defendants in their official capacities. However, in this action, Plaintiff seeks only monetary damages. Therefore, Plaintiff's RLUIPA claims against Defendants are subject to dismissal for this reason as well.

[6] Plaintiff also claims that Defendant Vogue violated Plaintiff's Eighth Amendment rights when Vogue "went inside [Plaintiff's] cell . . . and trashed [the] cell," "put[ting]

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes, U.S. Const. amend. VIII, and the Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.*

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for

---

[Plaintiff's] family pictures in the toilet and rip[ping] up [Plaintiff's] legal mail." (Compl., ECF No. 1, PageID.4.) The Court does not condone Defendant Vogue's alleged actions; however, the Court fails to discern, and Plaintiff fails to explain, how Defendant Vogue's actions constituted deliberate indifference, as required to state an Eighth Amendment claim. Instead, Plaintiff's claims against Defendant Vogue are properly analyzed under the First Amendment and Fourteenth Amendment. *See infra* Sections III.D–F. Accordingly, to the extent that Plaintiff intended to raise any Eighth Amendment claims against Defendant Vogue, such claims will be dismissed for failure to state a claim.

the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

However, not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the United States Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017); *Briggs v. Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020); *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2014). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976).  If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster*, 749 F.3d at 448; *Perez v. Oakland Cnty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440–41 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998).  "Where the claimant received treatment for his condition, . . . he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'"  *Mitchell*, 553 F. App'x at 605 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)).  The prisoner must show that the care the prisoner received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness."  *See Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

### 1.    Objective Component

As to the objective component, Plaintiff alleges no facts about his specific medical needs.  Although Plaintiff references two medications that he was taking during the relevant time period—"Effexor" and "boost bar"—Plaintiff alleges no facts about why he was taking these medications.  And, because Plaintiff alleges no facts

about his specific medical needs, he necessarily fails to allege any facts to suggest that his medical needs were sufficiently serious to satisfy the objective component of the relevant two-prong test.  For this reason alone, Plaintiff's Eighth Amendment claims can be dismissed.  Moreover, as explained below, even assuming, without deciding, that Plaintiff had alleged facts sufficient to satisfy the objective component, he also fails to allege facts sufficient to satisfy the subjective component.

## 2.    Subjective Component

Turning to the subjective component—i.e., the requirement that a plaintiff alleges sufficient facts to show that "the official [or medical provider was] both . . . aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]," and that the official or medical provider "also dr[e]w the inference," *Farmer*, 511 U.S. at 837—the Court addresses Plaintiff's allegations against Defendants Pants, Briske, Mason, and Martier below.

First, as to Defendants Pants, Briske, and Mason, Plaintiff's only allegation against these Defendants is that on March 2, 3, 4, 5, 6, 9, 10, 23, 24, 26, and 27, 2025, Plaintiff "was brought [his] a.m. and noon meds by RNs Pants, Briske, [and] Mason," and "they all told [him] if [he did not] take [his] meds, [he] would be panel." (Compl., ECF No. 1, PageID.3 (phrasing in original retained).)  Plaintiff's allegations are not a model of clarity; however, it appears that Plaintiff is alleging that on the above-listed dates, Defendants Pants, Briske, and Mason informed Plaintiff that if he did not take his medications, he could be subject to involuntary treatment, as determined by a "panel." *See, e.g.*, Involuntary Treatment of Mentally Ill Prisoners, MDOC Policy Directive 04.06.183 (eff. June 6, 2022) ("Prisoners who have been diagnosed as

mentally ill may be subject to involuntary treatment if the need for such treatment is established at a Mental Health panel hearing.").  Other allegations in the complaint suggest that Plaintiff was participating in Ramadan at the time and sought to consume food and medicine at set times consistent with Ramadan fasting requirements.  (*See id.*)  Plaintiff alleges that he informed an unnamed nurse on March 1, 2025, that he was participating in Ramadan and could only take medicine at certain times, and he alleges in a conclusory manner that "at no time did the RNs or nurses try to give [him his] meds at the proper time"; however, Plaintiff fails to allege any facts to suggest that Defendants Pants, Briske, and Mason were aware that Plaintiff was participating in Ramadan.  (*See id.*)

Further, Plaintiff's allegations against Defendants Pants, Briske, and Mason do not suggest that they prevented Plaintiff from receiving medical care.  On the contrary, Plaintiff's allegations suggest that Defendants Pants, Briske, and Mason provided medication to Plaintiff.  The fact that these Defendants told Plaintiff that he could be subject to involuntary treatment, as determined by a panel, if he did not take the medication does not show that they acted with deliberate indifference.  As noted above, Plaintiff alleges no facts to suggest that Defendants Pants, Briske, and Mason knew that Plaintiff was participating in Ramadan, and under these circumstances, Plaintiff's disagreement with the time at which these Defendants brought him medication is akin to claims premised on disagreements with medical providers' treatment decisions, which are insufficient to state an Eighth Amendment claim.  *Darrah*, 865 F.3d at 372; *Mitchell*, 553 F. App'x at 605.  Accordingly, for these

reasons, Plaintiff fails to state an Eighth Amendment claim against Defendants Pants, Briske, and Mason.

Next, as to Defendant Martier, Plaintiff alleges that on March 30, 2025, Defendant Martier brought Plaintiff his morning medicine, and Plaintiff "told [Martier] she only brought [Plaintiff his] boost bar [and] can she bring [Plaintiff's] Effexor." (Compl., ECF No. 1, PageID.3.) Defendant Martier told Plaintiff that she would do so "at 6:10." (*Id.*) Plaintiff claims that at some later unspecified time, non-party Correctional Officer Liz "called healthcare," and "they said Nurse Martier put in the book [that Plaintiff had received his] Effexor even though [he had not]." (*Id.*) Later that day, Plaintiff was "observed . . . on the ground shaking," and he was transported to Munson Hospital. (*Id.*, PageID.4.) Plaintiff asked the doctor at Munson Hospital if his "seizure like behavior" was "[be]cause [Plaintiff had not] had [his] medication Effexor for 24–36 hours." (*Id.*) In response, the doctor at Munson Hospital told Plaintiff that it "is unclear." (*Id.*)

It is apparent that Plaintiff believes that Defendant Martier should have given Plaintiff his Effexor medication on the morning of March 30, 2025, and that Plaintiff believes that Martier improperly recorded that Plaintiff had received Effexor on March 30, 2025; however, this one instance of Defendant Martier failing to give Plaintiff his medicine is insufficient to show that Martier disregarded Plaintiff's serious medical needs. *See, e.g.*, *Walker v. Peters*, 233 F.3d 494, 501 (7th Cir. 2000) (discussing that isolated incidents of delay in administering medications does not constitute deliberate indifference); *Mayweather v. Foti*, 958 F.2d 91, 91 (5th Cir. 1992)

(holding that an occasional missed dose of medication does not, without more, constitute deliberate indifference); *cf. Barnett v. Luttrell*, 414 F. App'x 784, 788 (6th Cir. 2011) (affirming dismissal of claim that prison nurse gave the prisoner-plaintiff the wrong medication because the complaint "allege[d] no facts suggesting that [defendant's] incorrect administration of [the medication] was anything other than negligent"). Therefore, because Plaintiff fails to show that Defendant Martier's actions constituted deliberate indifference, Plaintiff fails to state an Eighth Amendment claim against Defendant Martier.

In summary, for the reasons set forth above, all of Plaintiff's Eighth Amendment claims will be dismissed for failure to state a claim.

### D.   Fourteenth Amendment Due Process Claims Regarding the Deprivation of Plaintiff's Property

Plaintiff alleges that at some point "[w]hile [Plaintiff] was out of [his] cell, [Defendant] Vogue went inside [Plaintiff's] cell . . . and trashed [the] cell," "put[ting] [Plaintiff's] family pictures in the toilet and rip[ping] up [Plaintiff's] legal mail." (Compl., ECF No. 1, PageID.4.) To the extent Plaintiff intended to raise procedural due process claims regarding the deprivation of Plaintiff's property, as explained below, these claims are barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986).

Under *Parratt*, an individual deprived of property by a "random and unauthorized act" of a state employee cannot maintain a federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, while real, is not "without due

27

process of law." *Id.* at 537.  This doctrine applies to both negligent and intentional deprivations of property, as long as the deprivation was not pursuant to an established state procedure.  *See Hudson v. Palmer*, 468 U.S. 517, 530–36 (1984). Plaintiff must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479–80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993).  The Sixth Circuit has noted that a prisoner's failure to sustain this burden requires dismissal of his § 1983 due process action.  *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Here, Plaintiff fails to allege that his state post-deprivation remedies are inadequate. Plaintiff has available to him numerous state post-deprivation remedies. The Sixth Circuit has specifically held that Michigan provides adequate post-deprivation remedies for deprivation of property.  *See Copeland*, 57 F.3d at 480. Plaintiff fails to allege any reasons why a state-court action would not afford him complete relief for the deprivations, either negligent or intentional, of his personal property.

Accordingly, Plaintiff fails to state a Fourteenth Amendment procedural due process claim regarding the deprivation of his property.

### E.    Access to the Courts Claims

Although not specifically articulated by Plaintiff, the Court generously construes Plaintiff's allegation that Defendant Vogue "ripped up [Plaintiff's] legal mail" to raise an access to the courts claim.  (Compl., ECF No. 1, PageID.4.)

It is clearly established that prisoners have a constitutionally protected right of access to the courts under the First and Fourteenth Amendments.  *See Lewis v. Casey*, 518 U.S. 343, 354 (1996); *Bounds v. Smith*, 430 U.S. 817, 821 (1977); *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).  Prison officials have a two-fold duty to protect a prisoner's right of access to the courts.  *McFarland v. Luttrell*, No. 94-6231, 1995 WL 150511, at *3 (6th Cir. Apr. 5, 1995).  First, they must provide affirmative assistance in the preparation of legal papers in cases involving constitutional rights, in particular criminal and habeas corpus cases, as well as other civil rights actions relating to the prisoner's incarceration.  *Id.* (citing *Bounds*, 430 U.S. at 824–28).  Second, the right of access to the courts prohibits prison officials from erecting any barriers that may impede the inmate's accessibility to the courts.  *Id.* (citing *Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992)); *see also Bounds*, 430 U.S. at 822 (citing *Ex parte Hull*, 312 U.S. 546, 549 (1941)).

In order to state a viable claim for interference with his access to the courts, a plaintiff must show actual injury to pending or contemplated litigation.  *See Lewis*, 518 U.S. at 349; *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000.  In other words, a plaintiff must plead and show that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a non-frivolous legal claim.  *Lewis*, 518 U.S. at 351–53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996).  The United States

29

Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (discussing that *Lewis* changed actual injury to include requirement that action be non-frivolous).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.*

Here, Plaintiff fails to identify any underlying cause of action that was impacted by Defendant Vogue's destruction of Plaintiff's unspecified legal mail, let alone identify an underlying cause of action for which he may bring an access to the

courts claim.  Because Plaintiff fails to identify any underlying cause of action that was impacted, Plaintiff necessarily fails to show that the destruction of the unspecified legal mail resulted in any lost remedy in any underlying action.

For these reasons, Plaintiff has failed to state a claim for denial of access to the courts.  Accordingly, Plaintiff's access to the courts claim will be dismissed.

### F.    First Amendment Retaliation Claims

Finally, Plaintiff alleges that Defendant Vogue retaliated against Plaintiff when "[Defendant] Vogue went inside [Plaintiff's] cell . . . and trashed [the] cell," "put[ting] [Plaintiff's] family pictures in the toilet and rip[ping] up [Plaintiff's] legal mail." (Compl., ECF No. 1, PageID.4.)  Plaintiff claims "this officer's actions [were] retaliation for [Plaintiff] putting in a grievance on healthcare." (*Id.*)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution.  *See Thaddeus-X*, 175 F.3d at 394.  In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) the plaintiff was engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct.  *Id.*  Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct.  *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Here, Plaintiff's retaliation claim is entirely conclusory and fails to state a claim. Although Plaintiff's allegations suggest that at some unspecified time he filed a grievance against healthcare, which would constitute protected conduct, Plaintiff alleges no facts about *when* he filed this grievance and about *when* Defendant Vogue took the alleged adverse actions against him. Instead, Plaintiff merely alleges the ultimate fact of retaliation; however, he alleges no *facts* from which to reasonably infer that Defendant Vogue was motivated by any protected conduct. Under these circumstances, even if Plaintiff had alleged a vague suggestion of temporal proximity—which he has not—this would be insufficient to show a retaliatory motive. *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). Such "conclusory allegations of retaliatory motive 'unsupported by material facts'" do not state a claim under § 1983. *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (citation omitted); *see Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (holding that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotation marks omitted)); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims [that will survive § 1915A screening]." (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998))).

Accordingly, because Plaintiff fails to allege any facts to suggest that Defendant Vogue was motivated by Plaintiff's protected conduct, Plaintiff fails to state a First Amendment retaliation claim against him.  Plaintiff's First Amendment retaliation claims, therefore, will be dismissed.

## Conclusion

Plaintiff's motion to amend (ECF No. 4) will be denied.  Further, having conducted the review required by the PLRA, the Court determines that Plaintiff's complaint will be dismissed without prejudice for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3).  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).  For the same reasons the Court concludes that Plaintiff's claims are properly dismissed, the Court also concludes that any issue Plaintiff might raise on appeal would be frivolous.  *Coppedge v. United States*, 369 U.S. 438, 445 (1962).  Accordingly, the Court certifies that an appeal would not be taken in good faith.

An order and judgment consistent with this opinion will be entered.


Dated:  __August 18, 2025__                    __/s/ Phillip J. Green_____
                                                                PHILLIP J. GREEN
                                                                United States Magistrate Judge